IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EMMA WASHINGTON,

    *Plaintiff,*

vs.

ANDREW M. SAUL,[1]
Commissioner of Social Security,

    *Defendant.*

Case No. 18-1286-EFM

**MEMORANDUM AND ORDER**

Plaintiff Emma Washington seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for supplemental security income under Title XVI of the Social Security Act (the "Act"). Washington alleges that the administrative law judge ("ALJ") erred in formulating her residual functional capacity ("RFC"). Concluding that substantial evidence supports the ALJ's decision, the Court affirms the Commissioner's decision.

---

[1] On June 17, 2019, Andrew M. Saul was sworn is Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Saul is substituted for Acting Commissioner Nancy A. Berryhill as the Defendant. In accordance with the last sentence of § 405(g), no further action is necessary.

## I. Factual and Procedural Background

Washington was born on February 17, 1964. She has a high school education with some special education assistance. Washington has a limited work history as a cashier and housekeeper, and suffers from both physical pain and mental health disorders. The ALJ identified several impairments, including depressive disorder, borderline intellectual functioning, post-traumatic stress disorder (PTSD), personality disorder, a history of right ankle fracture, right shoulder bursitis, obesity, diabetes mellitus type II, hypertension, right leg neuropathy, and hernia. The ALJ found that none of these impairments met or equaled a listed impairment.

Washington filed for supplemental security income (SSI) in February 2010. After exhausting her administrative remedies, Washington filed for judicial review, and her case was remanded for further administrative proceedings. In November 2013, while the first case was pending, Washington filed a new application for SSI, which was consolidated with the remanded case.

An ALJ held an administrative hearing in June 2016 and requested medical interrogatories from an orthopedic specialist, Dr. Jeffrey Hansen. Hansen indicated that Washington's condition did not meet or equal a listed impairment, but that she was subject to the following limitations: lifting up to 10 pounds frequently and 20 pounds occasionally; occasionally carrying a maximum of 10 pounds; sitting for no more than six hours out of an eight-hour workday, for up to two hours at a time; standing for a total of three hours of an eight-hour workday, for up to 30 minutes at a time; and walking for up to an hour of an eight-hour workday, up to one hour at a time. Hansen also indicated that Washington should be restricted to a total of four hours of standing and walking, with only occasional overhead reaching.

The ALJ adopted Hansen's recommendations, except for the restriction to only occasionally carry up to 10 pounds.[2] The ALJ did not explain why he omitted the carrying limitation.

In October 2016, a vocational expert identified three jobs that a hypothetical individual with Washington's vocational profile and RFC assessment could perform: "photocopy machine operator (22,674 jobs existing nationally), shipping and receiving weigher [sic] (30,411 jobs existing nationally), and mail clerk (61,431 jobs existing nationally)."[3] Washington's counsel asked the vocational expert about the impact of hypothetical carrying limitations on the identified jobs. The expert explained that these jobs mostly accounted for the limitations, although some of them may not.[4] Furthermore, Washington's counsel asked whether the jobs that the vocational expert identified required a person to carry 10 pounds occasionally, to which the expert responded: "Yes, based on the job duties a worker would have to lift and/or carry 10 pounds occasionally to perform those above-mentioned jobs."[5]

After considering the evidence outlined above, the ALJ issued a decision in 2017 finding Washington was not disabled under the Act. Washington requested review of the ALJ's decision

---

[2] The two other medical opinions of record—issued by state agency physicians Gerald Siemsen, M.D., and C.A. Parsons, M.D.—found Washington capable of full light exertional lifting (e.g., lifting and carrying 20 pounds occasionally and ten pounds frequently) consistent with the ALJ's residual functional capacity assessment.

[3] *See Dep't of Labor, Dictionary of Occupational Titles* (DOT), No. 207.685-014, 1991 WL 671745 (4th ed. 1991) (photocopy machine operator); No. 222.387-074, 1991 WL 672108 (shipping and receiving weigher); No. 209.687-026, 1991 WL 671813 (mail clerk).

[4] "Not all light level jobs are rated light for lifting or carrying up to 20 pounds. I do believe there could be select settings that could exceed the 10 pounds carrying, most likely that would be with the Mail Clerk position. Again, based on my study of those jobs, most do not require carrying over 10 pounds . . . ." Tr., Doc. 5, p. 908.

[5] Tr., Doc. 5, p. 908.

by the Appeals Council. The Appeals Council denied her request, and Washington timely filed her complaint appealing that decision in this Court.

## II. Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides that the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive.[6] The Court must therefore determine whether the Commissioner's factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard.[7] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[8] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[9]

An individual is disabled under the Act only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[10] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[11] The Social Security Administration has

---

[6] 42 U.S.C. § 405(g).

[7] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[8] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[9] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[10] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[11] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

established a five-step sequential evaluation process for determining whether an individual is disabled.[12] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[13]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments.[14] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[15]

After assessing the claimant's RFC, the ALJ continues to steps four and five, which require the ALJ to determine whether the claimant can perform her past relevant work, and if not, then whether she can generally perform other work that exists in the national economy.[16] The claimant bears the burden in steps one through four to prove a disability that prevents the performance of

---

[12] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[13] *Barkley*, 2010 WL 3001753, at *2.

[14] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[15] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[16] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

her past relevant work.[17] The burden then shifts to the Commissioner at step five to show that, despite her alleged impairments, the claimant can perform other work in the national economy.[18]

The parties in this case do not dispute that the first four steps in the sequential evaluation are met. The Court will proceed to the fifth step, where the Commissioner bears the burden to show that despite Washington's impairments, she can perform other work in the national economy.

### III. Analysis

Washington argues that the ALJ erred because he provided great weight to Hansen's opinion and incorporated all his recommendations into the RFC assessment, except the additional limitations of carrying more than 10 pounds and only occasionally carrying up to 10 pounds. She argues that this requires reversal because the limitations in carrying would eliminate the light exertional jobs identified by the vocational expert. She further argues that, even without this error, the ALJ's decision should not stand because the other limitations in the RFC assessment would significantly erode the light exertional job base. The Court concludes that any error the ALJ may have made is harmless because the vocational expert explicitly addressed the additional carrying limitations and the ALJ addressed the level of erosion in the light exertional job base.

The federal "harmless error" statute instructs courts to review cases for errors of law without regard to errors that do not affect the parties' substantive rights.[19] The Supreme Court has explained that "the party that seeks to have a judgment set aside because of an erroneous ruling

---

[17] *Lax*, 489 F.3d at 1084.

[18] *Id.*

[19] 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

carries the burden of showing that prejudice resulted."[20] If the ALJ's determination is otherwise supported by substantial evidence, a harmless error does not warrant remand.[21] Furthermore, courts should not reverse for error that, "based on a reading of the ALJ's decision as a whole, would lead to unwarranted remands needlessly prolonging administrative proceedings."[22] The Tenth Circuit has held that an ALJ's error in omitting a medical expert's limitations into an RFC is harmless where a vocational expert identifies jobs a person with those additional limitations could perform.[23]

Washington first argues that the ALJ committed reversible error by omitting Hansen's carrying limitation in his RFC assessment. In *Lane v. Colvin*,[24] the Tenth Circuit held that an ALJ's omission of a medical expert's recommended limitation in his RFC assessment was harmless, where jobs identified by a vocational expert nevertheless met the limitation.[25] In that case, the claimant sought disability insurance benefits and SSI.[26] A medical expert opined that the claimant should be restricted from frequent and prolonged contact with supervisors and co-

---

[20] *Shinseki*, 556 U.S. at 409 (internal quotation marks and citation omitted).

[21] *Bernal v. Bowen*, 851 F.2d 297, 302-03 (10th Cir. 1988); *see Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994) (a claimant cannot be successful on appeal, regardless of the merits of the issues raised, if she fails to challenge a finding that is sufficient by itself to support the denial of benefits).

[22] *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009) (internal quotations and citations omitted).

[23] *Lane v. Colvin*, 643 F. App'x 766, 769-70 (10th Cir. 2016); *see also Bainbridge v. Colvin*, 618 F. App'x 384, 391 (10th Cir. 2015) ("We need not resolve whether the ALJ should have included the additional manipulative limitations because, even if she should have, the error was harmless. . . . The [vocational expert] testified that the additional manipulative limitations would not preclude [other work].").

[24] 643 F. App'x 766 (10th Cir. 2016).

[25] *Id*. at 770.

[26] *Id*. at 767.

workers.[27] The vocational expert identified jobs that the claimant could perform, including bottling-line attendant, which specifically did not involve frequent and prolonged contact with supervisors and co-workers.[28] The court held that, since the vocational expert addressed the impact of those limitations, and the number of those jobs available in the national economy remained significant, the ALJ's omission was harmless error.[29]

Here, Washington is seeking SSI benefits. Hansen opined that Washington should be restricted from carrying more than 10 pounds and should only occasionally carry less than 10 pounds. The vocational expert identified jobs that Washington could perform, including photocopy machine operator, shipping and receiving clerk, and mail clerk. The vocational expert testified that these jobs satisfied the carrying limitation. As in *Lane*, the ALJ failed to expressly include Hansen's recommended carrying limitation in his RFC assessment, but the vocational expert nevertheless addressed the impact of those limitations.

Furthermore, the Court concludes that a significant number of jobs that Washington can perform remain in the national economy. Washington argues that the ALJ's decision omitting the carrying limitations would eliminate the jobs identified by the vocational expert. However, the vocational expert testified that the three jobs he identified—photocopy machine operator, shipping and receiving clerk, and mail clerk—comply with the carrying limitation. Even assuming that Washington could only perform the duties of a photocopy machine operator or shipping and receiving clerk, she could still perform approximately 53,000 jobs in the national economy. There

---

[27] *Id.* at 768.

[28] *Id*.

[29] *Id*. at 770.

is no doubt that 53,000 is a significant number of available jobs.[30] Since the vocational expert addressed the impact of the carrying limitations, and the number of available jobs in the national economy that Washington can perform remains significant, the Court concludes that the ALJ's omission was a harmless error.

Finally, Washington argues that, even without the previously stated error, the ALJ's decision should be reversed because the other RFC limitations significantly erode the light exertional job category, forcing her into the sedentary job category and preventing her from occupying any jobs in the national economy. The Commissioner admits that, since Washington turned 50 in 2014, the Medical-Vocational Guidelines direct a conclusion of "disabled" if she is limited to sedentary work and "not disabled" if she is limited to light work.[31] However, the Commissioner argues that Social Security Administration policy provides that, when a claimant's RFC falls between two exertional categories—one which would direct the conclusion of "disabled" and one which would direct the conclusion of "not disabled"—an ALJ should seek the opinion of a vocational expert as to the proper job category.[32] The Court agrees.

In this case, the ALJ sought the opinion of a vocational expert to help determine Washington's exertional category and performable jobs. The expert concluded that Washington could perform jobs listed in the light exertional category. Specifically, the vocational expert explained that the exertional category would erode due to Washington's restrictions in standing

---

[30] *See Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (finding that 11,000 jobs were a significant number of jobs); *see also Evans v. Colvin*, 640 F. App'x 731, 735 (10th Cir. 2016) (stating that, in the *Rogers* case, "we implied that 11,000 national jobs was a significant number"); *see, e.g., Padilla v. Berryhill*, 2017 WL 3412089, at *12 (D.N.M. 2017) (27,000 national jobs); *Breslin v. Colvin*, 2016 WL 5408126, at *4 (E.D. Okla. 2016) (54,000 national jobs).

[31] *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2, §§ 201.12, 202.13.

[32] SSR 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983).

and walking, but not below the light exertional category. The ALJ discussed this erosion in his decision. The Court concludes that ALJ's findings are supported by substantial evidence because the ALJ consulted with a vocational expert about the erosion of the light job base and the vocational expert was able to identify light jobs Washington could perform despite her exertional limitations and the erosion.[33]

The Court concludes that the Commissioner has met her burden, at step five of the sequential analysis, to prove that Washington can perform other jobs in the national economy. Therefore, the Court also concludes that the Commissioner's factual findings are supported by substantial evidence and that the ALJ applied the correct legal standard.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 29th day of August, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[33] *See Anders v. Berryhill*, 688 F. App'x 514, 521 (10th Cir. 2017) (upholding ALJ's decision even when the residual functional capacity assessment was a reduced range of light work and the exertional limitations eroded the job base by 80 percent).